COLORADO LIFE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68355. Promulgated January 30, 1934.

*R. H. Walker, Esq.*, for the petitioner.
*Nathan Gammon, Esq.*, for the respondent.

#### OPINION.

LANSDON: The respondent has determined a deficiency in income tax for the year 1930 in the amount of $1,439.76. The only issue is whether a certain payment made by the petitioner in the taxable year was interest and therefore deductible from income in such year in conformity with section 203 (a) (8) of the Revenue Act of 1928.[1]

---

[1] SEC. 203. NET INCOME OF LIFE INSURANCE COMPANIES.

(a) *General rule.*—In the case of a life insurance company the term "net income" means the gross income less—

\*    \*    \*    \*    \*    \*    \*

(8) INTEREST.—All interest paid or accrued within the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title; \* \* \*

The petitioner is an insurance company, with its principal office at Denver, Colorado. It was organized in 1919 with authorized capital of $200,000, of which $100,000 was paid in and the balance subscribed for. In 1921 it reinsured its business, distributed its assets to its stockholders and retired all its capital stock except two shares. In 1927 it was relicensed to do business in the State of Colorado, the laws of which provide that no insurance company shall operate therein unless it is possessed of an actual paid-up cash capital of not less than $100,000 and that whenever such minimum amount has been fully paid in and deposited with the commissioner of insurance, license to do business may be issued.

When it was decided to revive the petitioner in 1927, an agreement was entered into between it and a so-called " Director's Pool ", which provides as follows:

(Par. 2) WHEREAS, the Company desires to obtain sufficient funds at this time to obtain from the Insurance Department of the State of Colorado authority to begin the writing of Life Insurance for the reason, among other reasons, that assurances have heretofore been given to the purchasers of Endowment Bonds issued by the Company that on or about this time such authority would be obtained; and

(Par. 3) WHEREAS, the Pool is willing to advance to the Colorado Life Company, in one or several payments, a sum not exceeding One Hundred and Fifty Thousand Dollars ($150,000) as the Pool may determine, on condition that the Company make a satisfactory contract with the Pool by which the total of all payments made by the Pool to the Company shall be repaid to the Pool out of the surplus of the Company in excess of Fifty Thousand Dollars ($50,000) as hereinafter provided, and upon the further condition that the Company shall pay the Pool one per cent (1%) of the Premium Income of the Company for twenty-five years, as hereinafter provided; and

Paragraph 3 was subsequently modified to provide that the surplus out of which petitioner was to redeem the shares of stock issued to the pool should be $60,000 instead of $50,000.

The agreement further provided as follows:

(Par. 10) Whenever, if ever, the Company shall have made purchases from the Pool aggregating the total value of all payments made by the Pool to the Company with interest as aforesaid, then and thereupon the Pool shall immediately assign and deliver to the Company all of said Par Value shares and Full Participating shares which shall not have theretofore been assigned and delivered to the Company.

Pursuant to the foregoing provision of the agreement the " Director's Pool " paid the petitioner $100,000 in November 1927, made additional payments prior to the taxable year of $26,500, and at the date of the first payment received 2,000 par value and 8,000 full participating shares of stock. Shortly thereafter it delivered back to the petitioner one fourth of each class of stock so received and the petitioner issued to it 2,500 limited participating shares. The payment of $100,000 to the petitioner in November 1927 enabled the

petitioner to secure a license to transact business as an insurance company in the State of Colorado under sections 25 and 31 [2] of the insurance law of that state.

In November 1930, pursuant to the agreement, petitioner reacquired all its stock theretofore issued to the "Director's Pool" by the payment thereto of $126,500, plus $17,705.76 representing 8 percent per annum provided for in such agreement.

The petitioner contends that the payment of the aforesaid $17,705.76 in the taxable year was in discharge of interest then due on its indebtedness and, therefore, deductible from its income in that year as provided in section 203 (a) (8) of the Revenue Act of 1928. The respondent has determined that the amount in controversy was paid in connection with the redemption of the petitioner's stock and must be regarded as a dividend under the provisions of section 115 (a) and (g) of the Revenue Act of 1928.[3]

If the amount paid by the "Director's Pool" to the petitioner in 1927 was a loan secured by pledge of stock, it is clear that petitioner had no paid-in capital at that time and that its license to transact an insurance business was wrongfully obtained. We must presume that the commissioner of insurance required proof of compliance with all the pertinent provisions of the insurance laws of the state before the issue of the license. Having represented that the money in hand at the date of application for a license was paid-in capital, we are of the opinion that petitioner should not now be heard in a plea that such money was borrowed and the amount thereof a debt.

---

[2] Section 25. CASH CAPITAL DEPOSIT.

No joint stock life insurance company shall be permitted to do any business in this state unless it is possessed of an actual paid up cash capital as follows: Fire insurance companies * * * and life insurance companies not less than $100,000 * * *.

Section 31. Whenever such capital stock has been subscribed and not less than the amount required by this act shall have been fully paid in and deposited with the Commissioner as required by this act, they shall notify the Commissioner who shall cause an examination to be made either by himself or some disinterested person especially appointed by him for the purpose and who shall certify under oath that the provisions of this act have been complied with by said company as far as applicable thereto. A subscription of stock within the meaning of this act shall include only bona fide subscriptions from the public and not subscriptions by the corporation, association or individual who holds the same as sales agent or broker or for speculation or for the primary purpose of reselling same. * * *

[3] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) *Definition of dividend.*—The term "dividend" when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

* * * * * * *

(g) *Redemption of stock.*—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. * * *

*Angelus Building & Investment Co.*, 20 B.T.A. 667; affd., 57 Fed. (2d) 130.

After careful consideration of all the facts herein and of the applicable statutory provisions of the State of Colorado and the Federal revenue acts, we conclude that the " Director's Pool " bought the stock in question under an agreement to resell the same to the petitioner as and when surplus earnings might be available. In the transaction in the taxable year petitioner redeemed its stock, which had a basic value of $126,500. The Commissioner correctly determined that the amount paid to the " Director's Pool " in excess of such basis should be treated as a dividend.

*Decision will be entered for the respondent.*