*Decision will be entered under Rule 50.*

J. WEINGARTEN, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99707.    Promulgated June 25, 1941.

*Homer Mabry, Esq.*, and *J. L. Lockett, Esq.*, for the petitioner.

*Frank B. Schlosser, Esq.*, and *D. P. Moyers, Esq.*, for the respondent.

OPINION.

SMITH: The first question for decision is whether the petitioner is entitled to deduct from gross income $20,413.80 invested in the Keedoozle contracts. The petitioner contends that the loss was sustained in 1937, since in that year Clarence Saunders, acting for the Keedoozle Corporation, had practically acknowledged the worthlessness of the Keedoozle system by its abandonment. It therefore charged off its investment as a loss in 1937.

The respondent contends that the loss was not sustained in 1937 by reason of the fact that in 1938 Saunders continued his efforts to make the electrically operated system a success and that during 1938, 1939, and 1940 the petitioner had made requests upon the Keedoozle Corporation for it to furnish the equipment which was called for by the contracts.

The question of when a loss is sustained is a question of fact, to be determined in the light of all the circumstances of the case. This Board and the courts have many times held that a taxpayer may not, in the light of known facts, refuse to recognize a loss in one year and claim it in a subsequent year. If there is an identifiable event fixing a loss in one year it may not be claimed in a later year.

The petitioner contends that the identifiable event in the proceeding at bar was the practical acknowledgment by Saunders that the Keedoozle system was a failure in 1937. That is shown by the fact that he abandoned that system after it had been tried out in a store in Memphis. Admittedly it was in an experimental stage in 1937. We think, in the light of all of the facts in this case, that the loss was sustained in 1937. The respondent's action in disallowing the deduction of the loss is reversed.

The second question in issue is whether the petitioner is entitled to include in its dividends paid credit the amount of $27,180 which represents the premiums paid in cash or, to the extent of $19,400, in

an issue of 6 percent cumulative preferred stock of the petitioner in connection with the transaction involving the retirement of its 8 percent and 7 percent preferred stock.

Section 27 of the Revenue Act of 1936, under the heading "Corporation Credit for Dividends Paid" provides:

(a) DIVIDENDS PAID CREDIT IN GENERAL.—For the purposes of this title, the dividends paid credit shall be the amount of dividends paid during the taxable year.

\* \* \* \* \* \* \*

(e) TAXABLE STOCK DIVIDENDS.—In case of a stock dividend or stock right which is a taxable dividend in the hands of shareholders under section 115 (f), the dividends paid credit with respect thereto shall be the fair market value of the stock or the stock right at the time of the payment.

(f) DISTRIBUTIONS IN LIQUIDATION.—In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purpose of computing the dividends paid credit under this section, be treated as a taxable dividend paid.

\* \* \* \* \* \* \*

(h) NONTAXABLE DISTRIBUTIONS.—If any part of a distribution (including stock dividends and stock rights) is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part.

Section 112, under the caption "Recognition of Gain or Loss" provides in material part as follows:

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(2) STOCK FOR STOCK OF SAME CORPORATION.—No gain or loss shall be recognized if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation.

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed

earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

\* \* \* \* \* \*

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means \* \* \* (D) a recapitalization \* \* \*.

Section 115, so far as material, provides:

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

\* \* \* \* \* \* \*

(c) DISTRIBUTION IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. \* \* \*

\* \* \* \* \* \* \*

(f) STOCK DIVIDENDS.

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution.

(2) ELECTION OF SHAREHOLDERS AS TO MEDIUM OF PAYMENT.—Whenever a distribution by a corporation is, at the election of any of the shareholders (whether exercised before or after the declaration thereof), payable either (A) in its stock or in rights to acquire its stock, of a class which if distributed without election would be exempt from tax under paragraph (1), or (B) in money or any other property (including its stock or in rights to acquire its stock, of a class which if distributed without election would not be exempt from tax under paragraph (1)), then the distribution shall constitute a taxable dividend in the hands of all shareholders, regardless of the medium in which paid.

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether of not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

Admittedly all of the $27,180 in premiums called for by the outstanding 8 percent and 7 percent preferred stock was charged against

earned surplus, both those paid in cash ($7,780) and in 6 percent preferred stock ($19,400). The petitioner submits:

\* \* \* Since all outstanding shares of each of the three issues (8% voting stock, 8% non-voting stock, and 7% non-voting stock) were redeemed and retired, the distribution in connection therewith was a distribution in liquidation within the meaning of subsection (f) of Section 27 of the Act. And since the amount of such distribution which applied against or covered the premium on the liquidated stock was properly chargeable (and was in fact charged) to earnings and profits accumulated since February 28, 1913, that amount must under subsection (f), and for the purpose of computing the dividends paid credit, be treated as a taxable dividend paid.

It further submits that the Board in *Colorado Life Co.*, 29 B. T. A. 950, held that premiums paid on redemption of stock, pursuant to previous agreement, constituted a dividend, which was taxable to recipients.

The respondent, on the other hand, submits that the transactions presently under consideration amounted merely to a recapitalization of the petitioner's capital structure, cognizable as a reorganization under the applicable provisions of the Revenue Act of 1936; that the recipients of the 194 shares of petitioner's 6 percent preferred stock in payment of part of the premiums due them upon the redemption of their shares were not liable to income tax for 1937 upon their fair market value under section 112 (b) and (c) of the act. He cites in support of the latter proposition *Skenandoa Rayon Corporation*, 42 B. T. A. 1287 (now pending on appeal before the United States Circuit Court of Appeals for the Second Circuit). The facts in that case were that the taxpayer corporation had outstanding shares of 7 percent cumulative preferred stock on which there were unpaid dividends of $45.50 per share. Upon a recapitalization of the corporation each of the shareholders was entitled to receive and did receive 1.4 shares of new preferred stock plus $5.50 cash. In his determination of the deficiency the respondent allowed a dividends paid credit in respect of the cash paid but refused to allow a dividends paid credit in respect of the excess number of shares of the new preferred stock issued in exchange for the old. We held that the taxpayer was not entitled to a dividends paid credit in respect of those excess shares. Compare *South Atlantic Steamship Line*, 42 B. T. A. 705, in which the Board held:

In the course of readjustment of the capital structure of a corporation petitioner exchanged preferred stock upon which dividends were in arrears for new stock, bonds, and cash. *Held,* that receipt of the new stock was neither a dividend nor essentially equivalent to a dividend under section 115 (a) and 115 (g) of the Revenue Act of 1936; *held, further,* that the stock, debenture bonds, and cash were received by petitioner in the course of a reorganization and gain is recognized under section 112 (c) (1) only to the extent of the cash received.

The petitioner submits that the situation presented by the instant proceeding is different from the situations in the last two cited cases for the reason that the 8 percent and 7 percent preferred stockholders were given an option to receive either new shares of 6 percent preferred stock for their old stock or cash. It submits that, since they could have received cash had they so elected, the receipt of the cash and new shares in payment of their premiums makes the distribution of the $27,180 in question taxable dividends of the recipients. It relies upon section 115 (f). That section relates to "Stock Dividends." We are of the opinion that it is not applicable to this case. Clearly the corporation did not declare a stock dividend.

Although nothing is said in the resolution adopted by the stockholders of the corporation relative to a "recapitalization" of its capital structure, cf. *Skenandoa Rayon Corporation, supra*, we think it must be held that there was a recapitalization of the corporation within the meaning of the reorganization provisions of the Revenue Act of 1936—at least to the extent that the holders of 4,567 shares of the 8 percent and 7 percent preferred stock exchanged them for 4,761 shares of the new 6 percent preferred stock and $6,300 cash. At the time the resolution was adopted it was known that many of the 8 percent and 7 percent preferred stockholders would accept the 6 percent stock in exchange for their stock. The directors were instructed to obtain an amendment of the corporation's charter whereby the corporation would be permitted to issue 6,000 additional shares of 6 percent preferred stock to carry the plan into effect. Such plan constituted a recapitalization, and, hence, a reorganization within the meaning of the statute.

We think it plain that if all of the 8 percent and 7 percent preferred stockholders had accepted the plan and had received nothing but 6 percent preferred shares in exchange for their shares, the stockholders would not have been liable to any income tax on the gain under section 112 (b) (3) of the statute. Section 112 (c) (1) provides that if something besides stock is received upon a reorganization the recipients shall be taxable upon the gain "but in an amount not in excess of the sum of such money and the fair market value of such other property." Except for the cash in the amount of $6,300 received upon the exchange for the 4,567 shares, no other property was received. The recipients of the $6,300 cash are liable to income tax upon that amount of money and no more. See *South Atlantic Steamship Line, supra*.

Section 112 (c) (2) provides in part:

If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1)

as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. * * *

The above quoted language appeared first in section 203 (d) (2) of the Revenue Act of 1924. In the Ways and Means Committee Report (68th Cong., 1st sess., H. Rept. 179) is this statement:

* * * There is no provision of the existing law which corresponds to paragraph (2) of subdivision (d). This subdivision provides that any amount distributed by a corporation in connection with a reorganization which has the effect of a taxable dividend shall be taxed as a dividend and not as a taxable gain.

The necessity for this provision may best be shown by an example: Corporation A has capital stock of $100,000, and earnings and profits accumulated since March 1, 1913, of $50,000. If it distributes the $50,000 as a dividend to its stockholders, the amount distributed will be taxed at the full surtax rates.

On the other hand, corporation A may organize corporation B, to which it transfers all its assets, the consideration for the transfer being the issuance by B of all its stock and $50,000 in cash to the stockholders of corporation A in exchange for their stock in corporation A. Under the existing law, the $50,000 distributed with the stock of corporation B would be taxed not as a dividend, but as a capital gain, subject only to the 12½ per cent rate. The effect of such a distribution is obviously the same as if the corporation had declared out as a dividend its $50,000 earnings and profits. If dividends are to be subject to the full surtax rates, then such an amount so distributed should also be subject to the surtax rates and not to the 12½ per cent rate on capital gain. Here again this provision prevents evasions. * * *

We think, therefore, that the $6,300 paid out by the corporation and charged to its earned surplus in connection with the exchange of the 4,567 shares was a taxable dividend of the petitioner corporation and the petitioner is entitled to a dividends paid credit in respect of that amount.

The respondent submits that the evidence does not show whether the recipients of the $6,300 in cash are taxable thereon, since the cost of the shares to the several stockholders is not shown. The evidence does show, however, that the shares were issued by the petitioner corporation at par either for cash or for property of a value equal to par. This issue relative to the disallowance of the claimed dividends paid credit in the amount of $27,180 was raised by the respondent by an amendment to his answer. The burden of proof of showing that the stockholders were not taxable upon the $6,300 is upon the respondent. Since the respondent has not borne that burden it must be held that the $6,300 constitutes a taxable dividend of the recipients thereof.

We think that it may logically be said that the reclassification of the petitioner's capital structure relates only to the 4,567 shares of 8 percent and 7 percent preferred stock referred to above. The remaining 234 shares of that stock were redeemed in cash. That transaction constituted a liquidating distribution. The cash paid in

connection therewith was $1,480, which was likewise charged against earned surplus. Petitioner is entitled to a dividends paid credit in respect of that amount under section 27 (f) of the statute.

We thus reach the conclusion that petitioner is entitled to a dividends paid credit in the amount of $7,780, but not to a dividends paid credit in the claimed amount of $19,400, representing the portion of the premium paid by the issuance of 194 shares of the 6 percent preferred stock.

Reviewed by the Board.

*Decision will be entered under Rule 50.*